# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRCIT OF TENNESSEE

| | |
|---|---|
| **GEODIS LOGISTICS, LLC,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Case No.: _____ |
| | ) |
| **ROBERT KLUNK,** | ) |
| | ) |
| **Defendant.** | ) |

## COMPLAINT

Plaintiff, Geodis Logistics, LLC ("Plaintiff or "Geodis"), hereby files this Complaint against Defendant Robert Klunk ("Defendant" or "Klunk"), and alleges as follows:

### Parties

1. Plaintiff is a limited liability company organized under the laws of the State of Tennessee and headquartered in Brentwood, Williamson County, Tennessee.

2. Plaintiff is a supply chain management firm that provides transportation management warehousing, customs brokerage, freight forwarding, and import and export consulting services.

3. Defendant is the former Senior Vice President of New Business Development at Geodis. Upon information and belief, Defendant resides at 1415 Tidwell Switch Road, Dickson, TN 37055.

### Jurisdiction and Venue

4. This Court has federal question jurisdiction over the subject matter of this action pursuant to 18 U.S.C.A. § 1836, the Defend Trade Secrets Act.

5. Pursuant to 28 U.S.C.A. § 1391(b)(2), venue is proper in this Court because a substantial number of events or omissions occurred in this judicial district.

## Facts

6. Geodis is in the business of providing logistics and warehousing services to its clients.

7. Robert Klunk was employed as Geodis's Senior Vice President ("SVP") of New Business Development. In his capacity as a SVP, Klunk participated in and led high-level meetings whereupon he gained access to Geodis's strategies regarding its emergent business lines. In light of the commercial sensitivity of Geodis's confidential information, Klunk executed a Non-Solication and Confidentiality Agreement (the "Agreement"), whereby he agreed not to disclose Geodis's confidential information for his own benefit or for the benefit of anyone other than Geodis or its subsidiaries. A true and correct copy of the Agreement is attached hereto as **Exhibit 1**.

8. Klunk's duties included engaging with Geodis's new warehousing customers to implement new business, and he managed a team of approximately 10 people who assisted him with new business implementations. New business implementation includes guiding new customers through the "Geo-Launch" process, which is designed to actively guide and assist new customers through their business commencement with Geodis up until they achieve a steady-state status.

9. Klunk was an instrumental part of Geodis's growth and success. Geodis had as many as forty new business implementations per year, and Klunk was the most experienced and most knowledgeable executive at Geodis regarding its new business implementation process.

10. From September 7, 2018 through October 16, 2019, Project Verte, Inc. ("Project Verte" or "Verte"), was a Geodis client to whom Geodis provided logistics and warehousing services.

11. On September 7, 2018, Geodis and Project Verte entered into a Master Logistics Services Agreement (the "MSA") pursuant to which Geodis agreed to provide logistics and storage services to Project Verte and Project Verte agreed to pay for those services. As a part of the MSA, Project Verte agreed not to solicit Geodis's employees to work for Project Verte.

12. As with other Geodis clients, Klunk was one of the key developers of Project Verte's Geo-Launch process, and Klunk was instrumental in Geodis's implementation of its services for Project Verte.

13. After the relationship between Geodis and Project Verte was formed, Project Verte coaxed Klunk into reviewing resumes of individuals who Project Verte was considering whether to hire, which was outside of the scope of Klunk's responsibilities at Geodis.

14. In the second quarter of 2019, Klunk asked Geodis for its permission to serve on the board of Project Verte. Geodis declined Klunk's request because Klunk's participation on the board of Project Verte would have created a conflict of interest.

15. In his capacity as SVP of Geodis, Klunk learned of Geodis's confidential plan to launch an e-commerce fulfillment product.

16. The plan, referred to as "Brand.com," was a project comprised of sensitive systems, procedures, and operational strategies, the specifics of which were known only to a select group of Geodis employees.

17. During the time that Project Verte was a client of Geodis, the relationship between Klunk and Project Verte grew closer. As evidenced by correspondence dated August 11,

2019, Klunk drafted and submitted to Project Verte a nine page manifesto detailing the means by which Project Verte could maximize its business opportunities. The document is titled "Opportunities for Project Verte." Klunk transmitted this communication using his personal email account. This communication was beyond the scope of Klunk's responsibilities toward Project Verte as an employee of Geodis.

18. Additionally, as evidenced by communication between Klunk and Jossef Kahlon, an advisor to Verte that managed its distribution efforts and the father of Julian Kahlon (the Chief Executive Officer of Project Verte), dated September 3, 2019, Klunk helped Project Verte choose racking designs for its warehouse, an activity that was outside of the scope of Klunk's responsibilities at Geodis. Klunk transmitted this communication using his personal email account.

19. On September 9, 2019, Klunk resigned from Geodis by tendering a two-week resignation notice to Eric Douglas, the Executive Vice President of Technology and Engineering for Geodis. At this time, Klunk told Douglas that he was leaving Geodis to take a position as Chief Operations Officer for Project Verte.

20. In response, Douglas told Klunk that his employment for Project Verte would violate the MSA. Klunk replied by admitting that his employment for Project Verte would be a "delicate" issue. In this exchange, Klunk disclosed to Douglas that Project Verte offered him a substantial salary increase.

21. Geodis gave Klunk multiple opportunities to reconsider his resignation, but Klunk rejected those opportunities. Geodis had no choice than to reluctantly accept Klunk's resignation.

4840-2431-1216v1
2902696-000264 01/10/2020"

22. Upon his resignation, Geodis gave Klunk a letter reminding him of his ongoing confidentiality obligations to Geodis. A true and correct copy of this letter is attached hereto as **Exhibit 2**. Geodis retreived Klunk's work laptop and cell phone from him and told him that he did not have to report to work during the last week of his employment.

23. During the last week of his employment with Geodis, Klunk reported to work at Project Verte's warehouse.

24. The Geodis employees working at Project Verte's warehouse were surprised to see Klunk at the warehouse because they understood that Klunk did not have to work during the final week of his employment with Geodis.

25. For the final week of his employment with Geodis, Klunk reported to Project Verte's warehouse to work as an employee of Project Verte.

26. Klunk's first official day of employment as Project Verte's Chief Operating Officer was September 16, 2019, one week after he tendered his two week notice to Geodis.

27. During his final week of employment with Geodis, Klunk was being compensated by both Project Verte and Geodis.

28. Upon information and belief, Klunk disclosed specific factual details of Geodis's confidential information to Project Verte, including but not limited to, Geodis's invoicing of Project Verte and future plans regarding Brand.com's development.

29. Thereafter, Project Verte filed claims against Geodis, falsely stating that Geodis had intentionally submitted inflated and excessive invoices to Project Verte and had misappropriated Project Verte's confidential and proprietary information in Geodis's plans for Brand.com.

## CAUSES OF ACTION

### Count I: Breach of Loyalty Duty

30. The allegations in Paragraphs 1 through 29 are incorporated herein by reference.

31. As Senior Vice President of New Business Development at Geodis, Klunk served as an executive manager of Geodis.

32. As an executive manager of Geodis, Klunk had a duty of loyalty to devote his entire professional enegeries to the sole benefit of Geodis and to not act adversely to its interests.

33. Klunk violated his duty of loyalty to Geodis by working for Project Verte at the same time that he was an employee of Geodis.

34. Klunk violated his duty of loyalty to Geodis by working for Project Verte, an act that was adverse to Geodis's interest, as Project Verte had agreed not to solicit him.

35. Geodis has been damaged by Klunk's violation of his duty of loyalty, as it compensated him for the period of time in which he breached his duty to Geodis by working for Project Verte.

### Count II: Misappropriation of Trade Secrets

36. The allegations in Paragraphs 1 through 35 are incorporated herein by reference.

37. The Defend Trade Secrets Act, 18 U.S.C.A. § 1836, prohibits the misappropriation of trade secrets.

38. Geodis's plans regarding Brand.com, which included the platform's systems, procedures, and operations, derived its economic value by not being generally well known or readily accessible to the public through proper means.

39. Brand.com is a project that will enagage in interstate commerce.

40. Geodis took reasonable measures to keep information regarding Brand.com's

systems, procedures, and operations a secret.

41. Klunk acquired the information regarding Brand.com under circumstances giving rise to a duty to maintain the secrecy or limit the use of the information.

42. Klunk disclosed information about Brand.com's systems, procedures, and operations to Project Verte without the express or implied consent of Geodis.

43. Geodis has been damaged by Klunk's disclosure of this information, as Project Verte has used it to bring a meritless legal claim against Geodis, in which it is claiming that the information in question belongs to Project Verte.

**Count III: Violation of the Tennessee Uniform Trade Secrets Act**

43. The allegations contained in Paragraphs 1 through 43 are incorporated herein by reference.

44. The Tennessee Uniform Trade Secrets Act prohibits the misappropriation of trade secrets.

45. Klunk disclosed information belonging to Geodis that derived independent economic value from not being generally known.

46. Economic value could be obtained from the disclosure or use of the information.

47. Geodis made efforts to maintain the secrey of the information.

48. Klunk knew that he aquired the information under circumstnaces giving rise to a duty to maintain the secrecy of the information.

48. Klunk disclosed information about Brand.com's systems, procedures, and operations without the consent of Geodis.

49. Geodis has been damaged by Klunk's disclosure of Brand.com's systems, procedures, and operations to Project Verte, as Project Verte has used that information to bring

meritless legal claim against Geodis, claiming that the information in question belongs to Project Verte.

### Count IV: Breach of Contract

50. The allegations contained in Paragraphs 1 through 49 are incorporated herein by reference.

51. Klunk was party to a Non-Solicitaion and Confidentiality Agreement ("Agreement") with Geodis.

52. The Agreement was a contract supported by adequate consideration.

53. Pursuant to the Agreement, Klunk agreed not to disclose confidential information regarding Geodis's plans for its proprietary systems and procedures to third parties.

54. Pursuant to the Agreement, Geodis's systems, practices, and plans qualifiy as its confidential information.

55. Klunk breached the Agreement by disclosing information relating to plans for Brand.com's future operations, systems, and procedures to Project Verte.

56. Geodis has been damaged by Klunk's disclosure of its trade secrets and confidential information to Project Verte, as Project Verte has used that information to bring a meritless legal claim against Geodis, claiming that the information in question belongs to Project Verte.

### Count V: Breach of Contract

57. The allegations contained in Paragraphs 1 through 56 are incorporated herein by reference.

58. Klunk was party to a Non-Solicitaion and Confidentiality Agreement ("Agreement") with Geodis.

59. The Agreement was a contract supported by adequate consideration.

60. Pursuant to the Agreement, Klunk agreed not to disclose confidential information regarding Geodis's pricing and invoicing to third parties.

61. Klunk breached the Agreement by disclosing confidential pricing and invoicing information to Project Verte.

62. Geodis has been damaged by Klunk's disclosure, as Project Verte has used that information to bring a meritless legal claim against Geodis, asserting that Geodis intentionally submitted inflated and excessive invoices to Project Verte.

### Count VI: Defamation

63. The allegations contained in Paragraphs 1 through 62 are incorporated herein by reference.

64. Upon information and belief, Klunk communicated to Project Verte that Geodis's Brand.com project was modeled after and intended to replicate Project Verte's current and future operations, and was founded substantially upon, or at a minimum made substantial use of, proprietary and confidential information obtained by Geodis during the course of working with Project Verte.

65. Upon information and belief, Klunk communicated this statement with either knowledge that the statement was false, a reckless disregard for the truth or falsity of the statement, or with negligence in failing to ascertain the truth of the statement.

66. Geodis has been damaged by Klunk's defamatory statement, as Project Verte has used that statement to bring a meritless legal claim against Geodis, claiming that Geodis stole its confidential information.

## Count VII: Defamation

67. The allegations contained in Paragraphs 1 through 66 are incorporated herein by reference.

68. Upon information and belief, Klunk communicated to Project Verte that Geodis had intentionally submitted inflated and excessive invoices to Project Verte.

69. Upon information and belief, Klunk communicated this statement with either knowledge that the statement was false, a reckless disregard for the truth or falsity of the statement, or with negligence in failing to ascertain the truth of the statement.

70. Geodis has been damaged by Klunk's defamatory statement, as Project Verte has used that statement to bring a meritless legal claim against Geodis, claiming that Geodis intentionally submitted inflated and excessive invoices to it.

**WHEREFORE**, Plaintiff requests that process issue and that this Court accept jurisdiction of this case and, after all due proceedings, issue a judgment in favor of Plaintiff and against Defendant:

A. Awarding compensatory and punitive damages to Plaintiff in an amount to be determined at trial, including without limitation, Plaintiff's attorneys' fees and costs incured in the defense of Project Verte's meritless claim against it;

B. Finding Defendant liable for all damages awarded to Plaintiff;

C. Awarding such further general, legal, or equitable relief to which Plaintiff is entitled;

D. Awarding injunctive relief to Plaintiff to cause Defendant to cease disclosing its trade secrets; and

E. Awarding any other relief that this court deems just or appropriate.

Dated this 10th day of January 2020.

Respectfully submitted,

s/ Kenneth A. Weber
Kenneth A. Weber (BPR #015730)
Denmark J. Grant (BRP #036808)
BAKER, DONELSON, BEARMAN, CALDWELL
& BERKOWITZ, P.C.
211 Commerce Street, Suite 800
Nashville, Tennessee 37201
(615) 726-7369
(615) 744-7369 (facsimile)

Benjamin Bodzy (BPR# 023517)
Associate General Counsel
GEODIS Logistics, LLC
7101 Executive Center Drive, Suite 333
Brentwood, TN 37027
(615) 524-3671

Attorneys for Plaintiff